Louis Peck, J.
Landlord moves to implead Consolidated Edison and the Public Service Commission as parties "to this action and thereafter ordering said added parties to immediately restore electrical service to the premises known as 1041 Hoe Avenue, Bronx, New York”. Con Ed saw fit to submit opposing papers by its representative and Public Service Commission, appearing by attorney, presented the very concise position that this court did not have jurisdiction as to Public Service Commission and briefly contended "they” were not involved.
The subject premises are a multiple dwelling occupied by tenants and their respective families. Prior to March 3, 1975, then former owners incurred outstanding unpaid bills with Con Ed, as of March 6, 1974, amounting to $11,919.84 on the gas account, and as of August 30, 1974, the amount of $496.97 for electricity; as of June 25, 1975, the arrears amounted to a total of $20,161.43. The affirmation on behalf of Con Ed continues "not a single payment has been made on the gas account since August 23, 1973, and not a single payment has been made on the electric account since November 26, 1973.” Suffice it to say, it is beyond the comprehension of this court for such delinquency to be permitted to exist without the exercise of early and appropriate action by Con Ed. Whether such delinquency or indulgence may or may not be considered negligence and germane to the issue and whether such conduct on the part of Con Ed may be deemed a contributing factor towards the hapless conditions confronting the tenants today may well be worthy of consideration and investigation, but it should be emphasized, will have no bearing on the decision herein.
The present owners took title in March, 1975, Con Ed had already cut off electricity to all public areas in the premises. Under oath, on the record, the president and majority stockholder of plaintiff testified that he had converted the boiler system from natural gas to coal, that he had absolutely no secret, financial, business or other relation with the former owners, that he had offered a deposit of several hundred dollars to Con Ed for restoration of electric lighting to the public areas (hallways, etc.) of the premises and services to the superintendent’s apartment — which was refused. Further tes *7 timony elicited from a tenant, depicted the existence of dangerous and hazardous conditions, the highly volatile propensity for accidents and possible fatalities resulting therefrom and because of the absence of lighting after sunset the attraction of the premises to persons bent upon unlawful purposes. The foregoing testimony by persons with actual knowledge of course adequately eliminates any contention of hearsay in the opposing papers.
Further, no mention or reference is made by Con Ed and for that matter Public Service Commission to the special extraordinary powers placed with the Housing Court established by chapter 982 of the Laws of 1972 as amended by chapter 701 of the Laws of 1973.
The purpose clause of chapter 982 is explicit and all-encompassing as follows: "An act to amend the New York City civil court act, the New York city administrative code and the multiple dwelling law, in relation to the creation of a part of the civil court for the trial of actions related to the enforcement of state and local laws for building maintenance and operation, to establish a civil penalty for violations and to consolidate all actions to effective building maintenance and operation”. (Emphasis added.)
The statements of policy set forth in subdivisions (a) and (b) of section 1 thereof in their entirety are most comprehensive and applicable and completely pertinent as for instance the following (only to cite a few sentences):
"(a) The legislature finds that the effective enforcement of state and local laws for the establishment and maintenance of proper housing standards is essential to the health, safety, welfare and reasonable comfort of the citizens of the state * * * The legislature further finds that the establishment of adequate judicial procedures and machinery for the effective enforcement of building standards in the city of New York is a necessity in the public interest. [Emphasis added.]
"(b) The legislature finds that the effective enforcement of proper housing standards in the city of New York will be greatly advanced by the creation of a housing part of the civil court of the city of New York with jurisdiction of sufficient scope (i) to consolidate all actions related to effective building maintenance and operation, (ii) to recommend or employ any and all remedies, programs, procedures and sanctions authorized by federal, state or local laws for the enforcement of housing standards, regardless of the relief originally sought *8 * * * to accomplish and protect and promote the public interest and compliance. [Emphasis added.]
"§ 110. Housing Part, (a) A part of the court shall be devoted to actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards as follows: * * *
"(4) Proceedings for the issuance of injunctions and restraining orders for the enforcement of housing standards under the multiple dwelling law or such housing maintenance code * * *
"(7)(d) on the application of any party * * * the court, on its own motion, may join any other person or city department as a party in order to effectuate proper housing maintenance standards and to promote the public interest.”
The legislative intent as pronounced in the purpose clause of chapter 982 relating to the establishment of the Housing Court bears repetition to wit: "for the trial of actions related to the enforcement of state and local laws”; equally so, the language in the statement of policy subdivision (a): "effective enforcement of state and local laws for the establishment and maintenance of proper housing standards.”
Despite what may appear to be an apparent limitation in subdivision (7) of section 110 above, in this court’s opinion, both State and local agencies and persons having any effective authority and relation to the maintenance of decent housing standards in the City of New York affecting "the health, safety, welfare and reasonable comfort of the citizens of the state” are called upon to exercise such authority as may be at their disposal to effectuate the purposes of the Housing Court legislation, which it should be noted was with greatest foresight of Mr. Justice Edward Thompson, Administrative Judge, conceived, planned, urged, with his usual indomitable spirit, and brought into fruitful operation under his expert direction.
Upon the foregoing, the motion is granted as follows:
a. Consolidated Edison, a quasi-public corporation, and the Public Service Commission are impleaded as parties herein.
b. Con Ed is directed to restore service to the public areas of the subject premises and to the superintendent’s apartment therein promptly upon application for same and upon payment of a reasonable deposit by the new owners considering the conversion of the hot water and heating system to coal. *9 The amount of said deposit shall not exceed a liberal estimate of two months billing.
c. The Public Service Commission shall exercise whatever authority it may have within the provisions of the Public Service Law upon Con Ed in the circumstances with emphasis upon restoration of the required services in the subject premises.
d. All future applications herein to be made in the usual course to Part 17 of this court.